UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT A. SCHULTZ,

                                        Plaintiff,

          -vs-

                                                        06-CV-307C

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

          Plaintiff Robert A. Schultz initiated this action pursuant to § 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Social Security

Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  The

Commissioner has filed a motion (Item 8) for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure, and plaintiff has responded (Item 11).

For the following reasons, the Commissioner's motion is denied.

## BACKGROUND

          Plaintiff was born on April 28, 1959 (Tr. 30).[1]  He applied for SSDI and SSI benefits

on February 19, 2004, alleging disability as of June 1, 2002 due to fibromyalgia and lumbar

disc herniation with sciatica and radiculopathy to the legs (Tr. 58-64, 82, 102-03).  Plaintiff's

application was denied initially on April 22, 2004 (Tr. 44-49).  Plaintiff requested a hearing,

which was held on September 14, 2004 before Administrative Law Judge ("ALJ") William J.

_____

          [1]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint.

Reddy (Tr. 284-313).  Plaintiff testified at the hearing, and was represented by attorney

Charles Scibetta.  Mr. James Phillips, a vocational expert, also testified at the hearing.

By decision dated November 23, 2005, the ALJ found that plaintiff was not under

a disability within the meaning of the Social Security Act (Tr. 20-29).   Following the

sequential evaluation process outlined in the Social Security Administration Regulations

(*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that

plaintiff's impairments include a lower back disorder (lumbar disc herniation) which causes

significant vocationally relevant limitations (Tr. 21).  However, the ALJ concluded that while

plaintiff's condition was severe, it did not meet or equal the criteria of an impairment listed

in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 22).

The ALJ considered plaintiff's allegations and testimony regarding his functional limitations,

but found plaintiff to be "not totally credible" in this regard (T. 28).  The ALJ then found that

plaintiff retained the residual functional capacity to perform a full range of medium work (Tr.

29).[2]  According to the ALJ, plaintiff's medically determinable impairments and residual

functional capacity did not preclude him from performing his past relevant work as a light

assembler, cleaner, photographer, and school teacher (Tr. 28).

The ALJ's decision became the Commissioner's final determination on March 8,

2006, when the Appeals Council denied plaintiff's request for review (Tr. 4-6).  Plaintiff then

filed this action on May 11, 2006, pursuant to the judicial review provision of 42 U.S.C.

§ 405(g).

---

[2]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 CFR § 404.1567(c).

## **DISCUSSION**

I.    **Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's

decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial

evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined

as evidence which "a reasonable mind might accept as adequate to support a conclusion."

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir.

1999).  Under these standards, the scope of judicial review of the Commissioner's decision

is limited, and the reviewing court may not try a case *de novo* or substitute its findings for

those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether

the record, read as a whole, yields such evidence as would allow a reasonable mind to

accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d

639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y.

February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play,

it must first be determined that the facts of a particular case have been evaluated in light

of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976),

*quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680

(E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based

on an erroneous view of the law that improperly disregards highly probative evidence.

*Tejada*, 167 F.3d at 773.

## II.      Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."   42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).

The Social Security Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.   *See* 20 C.F.R. § 404.1520.   First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.   If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."   20 C.F.R. § 404.1520(c).   If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.   If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.   If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.   Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy,

-4-

considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids").[3] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff has not engaged in substantial gainful employment since June 1, 2002, the alleged onset date of plaintiff's disability (Tr. 21). Upon review of plaintiff's medical records, and in accordance with the second step of the sequential evaluation, the ALJ found that plaintiff suffered from a lower back disorder which, while severe, did not meet or equal the severity of an impairment in the Listings (Tr. 21-22).

Proceeding to step four of the evaluation process, the ALJ determined that plaintiff retained the residual functional capacity to perform the full range of medium work,

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education, and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy. *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

assigning "significant weight" to the assessment of a State Disability Determination Service medical consultant (Tr. 23).  The ALJ specifically rejected the opinions of two of plaintiff's treating physicians, Drs. Evan Calkins and Loubert Suddaby, which indicated that plaintiff retained the residual functional capacity to perform less than a full range of sedentary work (Tr. 24-25).  Based on this finding, the ALJ determined that plaintiff could return to his past relevant work, which did not require the performance of physical activity beyond the medium level of exertion (Tr. 28).  Because he found that plaintiff was not disabled at the fourth step of the sequential evaluation, the ALJ concluded that it was unnecessary to proceed to step five (Tr. 29).

Upon reviewing the ALJ's determination, and considering the administrative record as a whole, the court finds that the ALJ did not follow the requirements for evaluating the opinions of plaintiff's treating physicians set forth in the Regulations at 20 C.F.R. § 404.1527(d)(2), and remands the case to the Commissioner for reconsideration of plaintiff's application in light of those requirements.

## III.    Evaluation of Treating Physicians' Opinions

The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  As explained in the Regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide

a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion."  *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

In this case, as discussed above, ALJ Reddy assigned little or no weight to the medical opinions of two treating sources, Dr. Calkins and Dr. Suddaby.  The record reflects that Dr. Calkins is a specialist in rheumatology and geriatrics (*see* Tr. 192), and Dr.

-7-

Suddaby is a specialist in neurological surgery (*see* Tr. 257). Plaintiff was referred to these specialists by his primary provider, Dr. Raghupathy Varavenkataraman (*see* Tr. 201).

Dr. Calkins treated plaintiff on several occasions between October 2000 and March 2004 (*see* Tr. 167-204; 220-23). On December 21, 2000, Dr. Calkins reported that plaintiff had two problems, chronic fatigue syndrome with elements of fibromyalgia, and degenerative joint disease of the low spine (Tr. 198). An MRI report dated March 14, 2000 confirmed moderate disc degeneration and herniation at L5-S1, L4-5, and L1-2 (Tr. 166). At that time, plaintiff was "still out of work with his teaching job," but Dr. Calkins was hopeful that plaintiff could return to work soon (Tr. 199).

On March 6, 2001, Dr. Calkins reported that plaintiff's fibromyalgia and fatigue problems were under control, but he continued to have "very severe diffuse pain in his back" (Tr. 194). Dr. Calkins reported the history of plaintiff's back problems, stemming from separate incidents in 1996 and 1998 when he experienced pain after lifting heavy objects. Upon physical examination, Dr. Calkin's impression was that plaintiff "certainly has a significant problem with his spine" and, notwithstanding his age at onset, displayed symptoms of either spondylitis or spondylosis (Tr. 196).

Plaintiff continued to report low back pain when he saw Dr. Calkins again on March 27, 2001 (Tr. 192, 193). Dr. Calkins reviewed the March 2000 MRI report, which allowed him to rule out spondylitis (Tr. 193).

Plaintiff did not see Dr. Calkins again until June 2002, when he sought treatment for recurrence of symptoms of fibromyalgia (Tr. 190-91). Dr. Calkins prescribed "pharmacal treatment" for plaintiff's fibromyalgia which, by the time of a follow-up visit on August 1, 2002, had resulted in considerable improvement (Tr. 187). Dr. Calkins also reported that

plaintiff developed "very, very severe pain in the low spine" about a year prior, and since then had been seeing Dr. Suddaby for his lower back problems (Tr. 188).

On November 6, 2002, Dr. Calkins reported that plaintiff was "doing very well" with both his back pain and fibromyalgia (Tr. 185).  He had a new occupation as a photographer of historical points of interest, which he was pursuing "with considerable activity and enthusiasm" (*id.*).

On September 30, 2003, Dr. Calkins reported that plaintiff's symptoms and low back problems "ha[d] become worse," and that plaintiff was also experiencing pain in his neck and shoulders (Tr. 183).  He was following with Dr. Suddaby for his back problems (*id.*).

Plaintiff saw Dr. Calkins again on March 17, 2004.  Upon examination, plaintiff reported current symptoms of constant severe low back pain, as well as intermittent pain in his right shoulder, toes, feet, ribs, neck, and hip (Tr. 167).  Dr. Calkins' diagnosis was fibromyalgia (somewhat resolved), chronic fatigue syndrome, lumbar spondylosis, and herniated intervertebrae discs (*id.*).

At the time of plaintiff's March 17, 2004 visit, Dr. Calkins completed an extensive "Treating Physician's Form," which included a residual functional capacity assessment (*see* Tr. 167-82).  Dr. Calkins reported, among other things, that plaintiff could seldom lift ten pounds, "very infrequently" carry up to twenty pounds, stand and/or walk less than two hours per day, sit for no more than six hours per day, had limitations in pushing and pulling activities, and had "marked limitation" in the ability to deal with work stress (Tr. 172, 181).

Shortly after plaintiff's March 2004 visit, Dr. Calkins completed a "Medical Employability Evaluation" form at the request of the New York State Office of Temporary and Disability Assistance (Tr. 220-23).  Dr. Calkins indicated that plaintiff was not totally

and permanently unemployable, and could do both light work (occasionally lift twenty pounds, lift ten pounds frequently, stand/walk six hours per day) and sedentary work (occasionally lift ten pounds, stand/walk two hours per day, sit six hours per day) (Tr. 220). Dr. Calkins explained that the March 17, 2004 residual functional capacity assessment was based "entirely on [plaintiff's] statements" and that, in his opinion, "many, possibly most of these alleged limitations are *subjective* in nature and would not 'stand up' if objectively assessed" (Tr. 221).   He further explained that he had been treating plaintiff "primarily for his fibromyalgia . . .," and he thought it would be premature to evaluate plaintiff's disability status "in view of Dr. Suddaby's active participation" in treating plaintiff's lower back problems (Tr. 223).

Dr. Suddaby saw plaintiff on several occasions between April 2001 and September 2005 (*see* Tr. 206-11, 257-271).   On April 13, 2001, Dr. Suddaby reviewed a recent CT scan which supported his conclusion that plaintiff's back pain related to degenerative disc disease due to central disc herniation at L4-L5 and L5-S1 (Tr. 210).

On October 6, 2001, Dr. Suddaby reported that plaintiff continued to experience back pain, and that MRI results showed "moderate" central disc herniation at L4-5 and "small" herniation at L5-S1.  Based on this imaging, Dr. Suddaby was of the opinion that plaintiff's back pain was "discogenic in nature," and he discussed surgical options with plaintiff (Tr. 209).

On November 11, 2003, Dr. Suddaby reported that plaintiff's back pain had increased in intensity, with the pain radiating into both legs (Tr. 264).   Dr. Suddaby recommended an updated MRI scan and return to physical therapy (Tr. 265).

On April 4, 2004, plaintiff reported that his back pain continued to increase in intensity.  The MRI and physical therapy prescribed by Dr. Suddaby had not been authorized by plaintiff's compensation carrier.  Dr. Suddaby recommended that plaintiff "remain off work on disability" until this treatment could be obtained (Tr. 263).

The MRI was performed on October 22, 2004, and plaintiff visited Dr. Suddaby that same day.  Dr. Suddaby reported that the MRI confirmed disc herniations at L4-5 and L5-S1.  Plaintiff continued to have ongoing back pain with intermittent leg pain, showing no improvement since his last visit.  Plaintiff "continue[d] to be totally disabled" (Tr. 260).

On January 18, 2005, Dr. Suddaby reported that plaintiff continued to have constant lumbosacral pain, rated on a scale of 8/10.  Dr. Suddaby found that the degenerative nature of his discs, as well as the protrusions shown on the recent MRI, were contributing to the back pain.  Dr. Suddaby recommended a bilateral facet nerve block, as well as continued medication (Tr. 258).  Plaintiff "remains on a temporary, total disability rating" (Tr. 259).

On March 7, 2005, Dr. Suddaby reported that plaintiff had been placed on oral steroids, which had dramatically improved his back problem.  Dr. Suddaby warned plaintiff that long-term steroid use was not in his best interest, and that his symptoms could return once the steroids were discontinued.  He recommended a functional capacity assessment to determine plaintiff's physical ability to return to "some form of gainful employment" (Tr. 257).

On September 6, 2005, Dr. Suddaby completed a "Treating Physician's Form" (Tr. 267-71) which indicated a diagnosis of lumbago and lumbar disc herniation, with a "guarded" prognosis, rendering plaintiff unable to engage in sustained work (Tr. 269).  In

-11-

terms of physical limitations, Dr. Suddaby reported that plaintiff could occasionally lift and carry five pounds, but was unable to lift and carry more than five pounds; could stand or sit for no longer than twenty to thirty minutes without a break; and could walk for no longer than ten minutes (Tr. 269-70).

Finding Dr. Calkins' and Dr. Suddaby's assessments of plaintiff's residual functional capacity as "less than sedentary" to be "inconsistent with the other medical evidence, and . . . not well-supported by medically acceptable clinical and diagnostic techniques" (Tr. 25), the ALJ assigned "no weight" to Dr. Calkins' opinion, and simply rejected Dr. Suddaby's opinion outright without specifying whether he gave it any weight or not (*id.*). Instead, the ALJ assigned "significant weight" to the residual functional capacity assessment performed on April 22, 2004[4] by B. Intorre, a "DDS medical consultant," which reported that plaintiff "was able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk (with normal breaks) for a total of six hours in an 8-hour workday; sit (with normal breaks) for a total of about six hours in an 8-hour workday; and [that plaintiff] had unlimited push/pull abilities" (Tr. 23; *see also* Tr. 250-55).

The court finds that the ALJ's rejection of the residual functional capacity assessments of plaintiff's treating sources in favor of the assessment provided by the medical consultant did not comply with the regulatory requirements for evaluating medical evidence.  First of all, the ALJ did not discuss the length, nature, or extent of plaintiff's treatment relationship with either Dr. Calkins or Dr. Suddaby, nor did he mention these physicians' particular areas of expertise.  As demonstrated by the medical evidence

---

[4]The ALJ stated that this assessment was conducted on September 28, 2004 (Tr. 23).

discussed above, Dr. Calkins–a rheumatologist–primarily followed plaintiff for his fibromyalgia, while Dr. Suddaby–a neurosurgeon–treated plaintiff for his back problems. Dr. Calkins saw plaintiff on several occasions over the course of three and a half years and Dr. Suddaby saw plaintiff on several occasions over the course of four and a half years. Based on this evidence, it seems reasonable to conclude that these factors should have been considered as having some bearing on the relative weight to be accorded the treating sources' opinions on plaintiff's functional capacity to perform work.

In addition, as discussed above, Dr. Suddaby specifically relied on objective medical evidence (such as MRI results) to support his opinion that plaintiff's lower back pain was caused by disc herniations, protrusions, and other degenerative problems (*see, e.g.*, Tr. 209, 210, 258, 260).  In the court's view, this seriously calls into question the ALJ's stated reasons for rejecting Dr. Suddaby's residual functional capacity assessment as "not supported by the objective medical evidence when considered in its entirety . . . ." (Tr. 25).

Finally, the Regulations provide that:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.  Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(f)(2)(ii).  In this case, the ALJ did not even identify the State medical consultant who prepared the residual functional capacity assessment, apparently as the

result of a single visit in April 2004, which the ALJ so heavily relied upon in reaching his disability determination.  Nor did the ALJ indicate whether the consultant had any particular medical specialty or expertise in the rules for Social Security disability determinations, as the Regulations require him to do.

Contrary to the ALJ's determination that the consultant's assessment is supported by the medical evidence, the court's review of the administrative record reveals nothing beyond the consultant's own findings to indicate that, as of April 2004, plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently;  stand, walk or sit for six hours in an eight-hour workday; or perform any of the other physical activities required for medium work on a sustained basis.  Indeed, as reported by Dr. Suddaby–who had treated plaintiff for his back problems for several years–as of September 6, 2005 (a year and a half after the State medical consultant's report), plaintiff was able to lift and carry no more than five pounds, stand or sit for no longer than twenty to thirty minutes, and walk for no longer than ten minutes.

Based on this analysis, and after a full review of the administrative record, the court concludes that the ALJ's rejection of the opinions of plaintiff's treating physicians in favor of the State medical consultant's residual functional capacity assessment is not in accordance with the requirements of the Regulations and the case law, with the result that the ALJ improperly disregarded highly relevant evidence about the nature and severity of plaintiff's impairments and his capacity to perform substantial gainful work.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 8) is denied, and the case is remanded to the Commissioner pursuant to sentence four of § 405(g) for further proceedings in accordance with the matters discussed herein.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN

United States District Judge

Dated:   July    19   , 2007

p:\pending\2006\06-307.jun26.07